## SUDERMAN-DOLSON COMPANY V. J. F. RODGERS.

### Decided June 21, 1907.

**1.—Principal and Agent—Ratification.**

A principal can not be held to have ratified the unauthorized act of his agent unless at the time he does the act from which ratification is sought to be implied he had full knowledge of all the facts. Evidence considered, and held insufficient to show ratification.

**2.—Destruction of Crop—Measure of Damage.**

The general measure of damage for the destruction of a growing crop is its market value at the time of its destruction, and this value is fixed by what it would have been worth in the market had it matured, less the costs of cultivating, harvesting and marketing.

**3.—Written Contract—Evidence to Vary.**

Parol evidence is not admissible to change or vary the terms of a contract in writing, except under allegations of fraud, accident or mistake.

**4.—Contract—Proof of Consideration.**

Parol evidence is admissible to contradict and vary the recited consideration in a written contract of sale or lease, and to prove the true consideration for such contract.

Appeal from the District Court of Liberty County. Tried below before Hon. T. C. Crane.

*Stevens & Pickett,* for appellant.—Even the general agent of a corporation, like that of an individual, has only such powers incident to his regular duties as are usual, proper and necessary for the accomplishment of the purpose of his employment or the performance of the work in which he is engaged. Houston & T. C. Ry. Co. v. McKinney, 55 Texas, 184; McAlpin v. Cassidy, 17 Texas, 462; Miller v. Sullivan, 14 Texas Civ. App., 131; Franco-Texan Land Co. v. McCormick, 85 Texas, 420; Bernheim v. Lyon, 25 S. W. Rep., 57; Heflin v. Campbell, 5 Texas Civ. App., 107.

Where there is a complete destruction of growing crops the measure of damages is the market value of such crops at the time of their destruction. Texas & Pac. Ry. Co. v. Bayliss, 62 Texas, 570; Texas & St. Louis Ry. Co. v. Young, 60 Texas, 201; International & G. N. Ry. Co. v. Pape, 73 Texas, 502.

It is error to charge on a feature of law which is in nowise put in issue by the evidence. International & G. N. Ry. Co. v. Simcock, 81 Texas, 504; Texas & St. L. Ry. Co. v. Reid, 1 Texas App. C. C., sec. 120.

Before one can be held to have ratified an unauthorized act of his agent, he must be given and possess full knowledge of all the facts and circumstances surrounding the act he is said to ratify. Commercial Bank v. Jones, 18 Texas, 824; Jones v. Ford, 60 Texas, 132; Etheridge v. Price, 73 Texas, 601.

If the act of an agent does not come within the scope, or apparent scope, of the authority of said agent, his principal can not be bound by such act simply because the party dealing with said agent believed and relied upon his having the authority to perform the act. McAlpin v. Cassidy, 17 Texas, 462; Franco-Texan Land Co. v. McCormick, 85 Texas, 422; Ft. Worth & D. C. Ry. Co. v. Johnson, 2 Texas App. C. C., sec. 234.

*Marshall & Marshall* and *A. W. Marshall,* for appellee.—Where a corporation holds a person out as its general agent to act in all things necessary to the carrying out of a piece of work, and such acts are within the apparent scope of his authority, viewed from all the surrounding circumstances, the principal is liable for such acts of the agent, although same might have been outside of the power really conferred upon him. And the making of a contract of employment with another in consideration of the lease of a farm and house, when such a lease is necessary to carry along the work, is such an act as comes under the apparent scope of the authority of the agent. Merriman v. Fulton, 29 Texas, 98; New York, etc., Ins. Co. v. Rohrbough, 2 Texas App. Civ., 168; Barnes v. Downs, 2 Texas App. Civ., 474; Gulf, C. & S. F. Ry. Co. v. Hume, 87 Texas, 219; Lillard & Co. v. Mitchell, 3 Texas App. Civ., sec. 457; Collins v. Cooper, 65 Texas, 460; Fitzhugh v. Franco-Texas Land Co., 81 Texas, 306; Missouri Pac. Ry. Co. v. Simons, 6 Texas Civ. App., 625; Flewellen v. Mittenthal, 38 S. W. Rep., 235; Merchants & F. Cotton Co. v. Lufkin

Nat. Bank, 9 Texas Ct. Rep., 258; Tabet v. Powell, 13 Texas Ct. Rep., 436; Irions v. Cook, 11 Ired. (N. Car.), 203; Ecker v. Ry. Co., 8 Mo. App., 223.

If the authority of the agent is a general authority, with no written authority, but his powers are general to carry out a certain work, in construing his powers, great latitude is given, and those acts will be construed as within the apparent scope of his authority which otherwise would not; and especially so, when the agent has exercised similar powers and done similar acts which were acquiesced in by the principal. Hull v. East Line, etc., Co., 66 Texas, 620; Poole v. Houston & T. C. Ry. Co., 58 Texas, 139; Collins v. Cooper, 65 Texas, 466.

Where plaintiff declares on a parol contract, and defendant denies same and pleads a written contract, and when plaintiff undertakes to prove his parol contract, the mere fact that defendant has pleaded a written contract, which is not yet in evidence or before the court, will not be ground for refusing parol evidence on a parol contract. Parol evidence, is admissible to prove a parol contract, and the written contract, if there were such in this case, was not before the court, hence there could be no such thing as contradicting a written contract by parol evidence. Besides, plaintiff utterly denied the written contract in toto, and parol evidence was admissible to present plaintiff's case, even if the written contract affirmed by defendant, had been first introduced. 1 Greenl. Evi., sec. 275 et seq.

If the crops destroyed have no market value, and are such as to have no market value, the measure of damage for destruction of same would be the reasonable value of the crops destroyed. City of Dallas v. Allen, 40 S. W. Rep., 324; Ethridge v. San Antonio & A. P. Ry. Co., 39 S. W. Rep., 204 (Texas); Gulf, C. & S. F. Ry. Co. v. Sumrow, 4 Texas App. Civ., 579; Texas & S. L. Ry. Co. v. Reid, 1 Texas App. Civ., 120.

In suits for damages for destruction of a growing crop the correct criterion of estimating its value is to estimate its value when matured, and make proper reductions for contingencies and expenses attending its future cultivation and care. Gulf, C. & S. F. Ry. v. McGowan, 73 Texas, 355; International & G. N. Ry. Co. v. Pape, 73 Texas, 501; Galveston, H. & S. A. Ry. Co. v. Parr, 8 Texas Civ. App., 284.

Ratification or accepting part of benefits of a contract is a ratification of the whole. Miller v. McDannell, 1 Posey, U. C., 262; Conley v. Columbus Tap Ry., 44 Texas, 581; Word v. McKinney, 25 Texas, 267.

PLEASANTS, ASSOCIATE JUSTICE.—Appellee brought this suit against appellant, a private corporation chartered under the laws of this State, to recover damages for the breach of a rental contract alleged to have been made by appellant acting through its duly authorized agent, A. A. Kelly.

The petition alleges, in substance, that on the 1st day of April, 1906, plaintiff rented to defendant for the use and occupancy of the workmen and teams employed by it in the construction of a railroad

through Liberty County, known as the Beaumont, Sour Lake and Western Railroad, certain premises in said county, known as the Berryhill farm; that by the terms of said rental contract defendant was given the right to the use and possession of the dwelling house, barn and stable lot on said premises for a time of two and one-half months, and plaintiff expressly reserved the right to cultivate the farm upon the premises during said occupancy of the remainder of the premises by defendant; that as consideration for the use of the premises so let to defendant it agreed and promised to give plaintiff, who is a physician, all of the medical practice required by the employees of defendant during the construction of said railroad through Liberty County, and guaranteed to plaintiff that the value of said practice to him would not be less than $150 per month, and promised to reserve each month from the wages earned by its employees the amount so guaranteed to plaintiff and pay same to him; that plaintiff delivered possession of the rented premises to defendant and it enjoyed the use and occupancy of same in accordance with said contract, but that defendant failed and refused to comply with its agreement to give plaintiff the medical practice required by said employees and has only paid plaintiff for medical services rendered by him during a portion of the month of April, 1907; that by reason of defendant's breach of said contract plaintiff has lost the sum of $150 per month for the months of May, June, July, August and September, 1906, aggregating the sum of $750; that defendant in further disregard and violation of its said contract allowed its employees to tear down the fence around the farm upon said premises and to turn the teams used by them into said farm and thereby destroyed the crop which was being grown thereon by plaintiff and which, at the time it was so destroyed, was of the value of $225. The prayer of the petition is for the recovery of said sums of $750 and $225.

The defendant answered by general and special exceptions and general denial, and specially pleaded that the contract under which it rented from plaintiff the premises described in plaintiff's petition was in writing, and that the consideration for the use of said premises as shown by said contract was $60, which amount it had paid plaintiff, and that under said contract the whole of the premises, including the farm, were let to defendant and it was therefore not liable to plaintiff for any injury to any crop that may have been planted by him on said farm.

There was a jury trial in the court below, and verdict and judgment was rendered in favor of plaintiff for $450 on his claim for $150 per month under the contract, and the further sum of $100 as compensation for the crop destroyed by the defendant.

The evidence shows that appellant rented from appellee the premises described in the petition and occupied and used same for the housing and accommodation of the men and teams employed in the construction of the railroad before mentioned, from about April the 1st to June 15, 1906.

Appellee testified that he did not rent appellant the field, but

only rented the house and yard and the barn and stable lot; that he had rented the place himself for the year 1906 for $65 and that appellant's agent, Kelly, agreed to pay him the $65 for the use of the house and barn with yard and lot connected therewith. He further testified as follows: "He (Kelly) also told me that I could have the practice for all the men who had worked there, on the contract building the road, and that he would have from 100 to 500 men at work all the time, and they would pay me fifty cents per man per month for my work, and that I could get this fifty cents per man per month from the first of April to the first of October, and may be to the first of December, and that he would guarantee it to be $150 per month during that time, and then I agreed to rent him my place on those terms; and the contract was to last from the first of April to the first of October, 1906. I knew that they had working for them during that time from 300 to 400 men, and I was to get fifty cents per man per month and had an agreement with Mr. Kelly to pay me the certain amount of $150 per month. I went to work and worked about two weeks and me and Mr. Kelly both were discharged. Or, maybe I worked three weeks. And after awhile they sent me a check for $36. I worked for them under that contract and they paid me $36 by a check, signed by the Suderman-Dolson Company. I stopped working for the Suderman-Dolson Company because I was notified that I and Mr. Kelly were both discharged from the service of this company." Appellee further testified that he only made one contract with appellant for the rent of the premises and that said contract was not in writing.

The appellant introduced in evidence the following written contract: "April 5, 1906. I, John F. Rodgers, for and in consideration of sixty dollars paid to me by the Suderman-Dolson Company, of Houston, which is hereby acknowledged, do hereby lease my place, including farm, all buildings, out-houses, and enclosures, to the said Suderman-Dolson Company, for the term of eight months, or until they shall complete the work of constructing the Beaumont, Sour Lake & Western Railway. The place rented, and above mentioned, is my home place, and is known as the Berryhill place, Liberty County, Texas.

- "J. F. Rodgers.

"Witness: C. E. Stephens."

C. E. Stephens, whose name is subscribed to this contract as a witness, testified for appellant that he was present and saw appellee sign the same.

In regard to the execution of this contract appellee testified: "I never signed that contract. I never saw anything like it in my life. I signed that receipt for $38. That is the $38 with $6 deducted as a commissary account. I recognize my signature on that receipt, but I don't know anything about that one on the contract. I might have signed it but I didn't sign it to that kind of a contract. The signature on there they put it on there. I never signed any such contract as this to my recollection. That signature on the contract looks

very much like mine; they might have changed the writing on that paper. I wouldn't swear that the signature on it is mine. I will not swear that it is not mine. It looks like my signature. I would not swear that it is, or is not, my signature." Appellee testified that Kelly paid him $60 for the rent of the premises.

Other witnesses for plaintiff testified that Kelly agreed as a part consideration for the use of the premises to employ appellee as the regular physician for the workmen of appellant engaged in the construction of the railroad, and guaranteed that he would receive as much as $150 per month for his services as such physician. Kelly was an employee of appellant and was the foreman in charge of the work of constructing the Beaumont, Sour Lake & Western Railroad through Hardin County, appellant having the contract for the construction of said road. He employed the men to perform the labor necessary in the construction of the road and paid them the wages fixed by appellant, and had general supervision and control over the men and the work. He was not authorized by the appellant to employ a physician for the men engaged in the work, and the appellant company had not followed the practice of employing a physician for its laborers and of deducting from the wages of the laborers any sum per month for payment of a physician's salary. As soon as the company learned that appellee was claiming that Kelly had employed him as a physician and had agreed to retain a portion of the wages of the laborers to pay him a monthly salary, it notified appellee that Kelly had no such authority and that it would not be bound by such contract, and also discharged Kelly from its service. This discovery was not made by appellant until it received the pay rolls for the month of April from which it appeared that some of its employes had been charged fifty cents a piece as medical fees to be paid appellee. The sum so deducted from the wages of the laborers amounted to $38 and this sum was paid appellee.

The manager of appellant company testified that the $38 was turned over to appellee because the company was occupying his house and did not want any trouble with him, and that the money was not paid back to the men from whom Kelly had collected it.

There is no evidence that appellee ever informed any of appellant's officers or agents that Kelly had agreed as consideration for the use of said premises to pay him $150 per month or had employed him for any definite time, and appellant's manager testified that appellant had no notice of such claim by appellee until this suit was brought.

Appellant presents numerous assignments of error, but we deem it unnecessary to discuss any of them in detail.

We do not think the issue of authority in Kelly to make the contract sued on is raised by the evidence, and the issue of the liability of appellant on such contract on the ground that it had ratified the act of Kelly in making the contract, is not raised either by the pleadings or the evidence. There is no question of Kelly's authority to rent the premises, and if appellant with knowledge of the fact that he had agreed as part of the consideration for the use of

said premises to employ appellee and pay him the $150 per month, continued to use the premises it might be held to have ratified the contract, but the evidence is undisputed that appellant did not know that such agreement had been made until after the term of the lease had expired and the premises had been abandoned, and it is well settled that one can not be held to have ratified the unauthorized act of his agent unless, at the time he does the act from which ratification is sought to be implied, he had full knowledge of all the facts.   Commercial Bank v. Jones, 18 Texas, 824; Jones v. Ford, 60 Texas, 127; Etheridge v. Price, 73 Texas, 597.

The court submitted the issue of ratification to the jury and appellant, under the appropriate assignment, complains of the charge on this account.   As we have before stated, we do not think the issue of ratification was raised by the evidence and it should not have been submitted to the jury.

Upon the issue of appellee's claim for damages the trial court instructed the jury as follows: "And if you find for plaintiff on the issue of destruction of crops, as is alleged by plaintiff, you will assess his damages at the reasonable value said crops would have been worth if the same had matured, less the work and expense of cultivating and harvesting the same, allowing reasonable amounts thereof and no more."

The crop, for the destruction of which damages are sought to be recovered by appellee, consisted of corn, cane, millet, potatoes and other garden truck.   The general measure of damages for the destruction of a growing crop is its market value at the time of its destruction, and this value is fixed by what it would have been worth in the market had it matured, less the costs of cultivating, harvesting and marketing.   The evidence shows that there was a market value for the corn and potatoes, and it was therefore error to submit the issue of the reasonable value of such crop.

The jury found that appellee did not sign the written contract pleaded by defendant, and there is no assignment challenging this finding on the ground that it is not supported by the evidence.   With this contract out of the case the question of the admission of parol evidence to vary the terms of a written contract does not arise.   If upon another trial, however, the jury should find that the written contract pleaded by appellant was executed by appellee, parol evidence would not be admissible to show that the farm was not included in the lease, because the written contract expressly states that the entire premises including the farm was let to appellant, and parol evidence would not be admissible except under allegations of fraud or mistake to change or vary the written contract.

This rule, however, does not prevent a party to a contract of sale or lease of land from showing by parol the true consideration for such contract, and if the alleged agent, Kelly, had authority to bind appellant by his agreement to employ appellee, or if appellant ratified the agreement so made, and such agreement was a part of the consideration for the lease, it could be shown by parol notwithstanding the written contract only recites a consideration of $60. Johnson v. Elmen, 94 Texas, 168.

What we have said disposes of all the material questions presented by the record.

Because of the errors before indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*